UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JEREMY COLEMAN #508707 | CIVIL ACTION NO. 13-cv-2616 |
| VERSUS | JUDGE WALTER |
| WARDEN DAVID WADE CORRECTIONAL CENTER | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Jerome and Keisha Avery agreed to sell a large amount of marijuana that they delivered to a home in the Cedar Grove neighborhood in Shreveport. Jeremy Coleman ("Petitioner") and two other men were waiting at the house to rob them of the marijuana. Jerome escaped the robbery with his life, but Keisha was shot seven times with two different firearms. She died from the injuries, which included one shot through her head. Petitioner admitted that he participated in the robbery but denied that he possessed a weapon.

Petitioner was charged with second-degree murder, which carries a mandatory sentence of natural life imprisonment. Attorney Kammi Whatley was appointed to represent Petitioner. After three days of jury selection, Ms. Whatley negotiated a plea agreement that called for Petitioner to plead guilty to manslaughter (which carries a maximum 40-year sentence) and plead guilty to being a second felony offender (which increased the sentencing exposure to a range of 20 to 80 years), with an agreed sentence of 50 years without benefit of probation or suspension of sentence. The sentence did not

prohibit parole, so Petitioner could potentially be released in much less than 50 years with the benefit of good time and parole. The State also agreed to dismiss another felony charge that was pending against Petitioner. Petitioner entered the guilty plea and received the agreed 50-year sentence.

Petitioner later retained attorney Alex Washington to file a post-conviction application and assert claims that Ms. Whatley rendered ineffective assistance of counsel ("IAC"). Washington filed some proceedings in state court, though not in accordance with Petitioner's instructions, and eventually withdrew from the case. Petitioner completed the state court proceedings pro se and then filed this federal petition.

Petitioner's federal petition anticipated that he faced timeliness and procedural bar issues, so he first argued that attorney Washington provided IAC in the post-conviction proceedings so that, under Martinez v. Ryan, 132 S.Ct. 1309 (2012) and Trevino v. Thaler, 133 S.Ct. 1911 (2013), Washington's IAC in the state habeas proceedings excused Petitioner's failure to properly present his underlying IAC claims against trial attorney Whatley.

This court originally denied the habeas petition on the grounds that the IAC claims regarding Whatley's performance were unexhausted; Petitioner raised them for the first time in a filing with the Supreme Court of Louisiana. The Fifth Circuit reversed and remanded. It held that Petitioner's IAC claims against Whatley are procedurally defaulted, but Petitioner can benefit from the Martinez/Trevino exception to the procedural default rule if he can show that he has a substantial IAC claim against Whatley and he received IAC from Washington during the state post-conviction process. The case was remanded

to this court to "conduct proceedings as needed" and decide whether Petitioner had satisfied the remaining two requirements to show cause for his procedural default under Martinez/Trevino. Coleman v. Goodwin, 833 F.3d 537 (5th Cir. 2016).

This court ordered (Doc. 19) the State to respond to the petition, and it filed a copy of the state court record and a memorandum in response to the petition. Petitioner was afforded time to file a reply, but he did not. He did enroll counsel to represent him. For the reasons that follow, it is recommended that the federal habeas petition be denied on the merits.

**Petitioner's Claims**

Petitioner argues that Whatley committed IAC because she: (1) failed to move for a continuance or withdraw; (2) failed to contact two alibi witnesses and investigate the case before advising him to plead guilty; (3) failed to move to suppress Petitioner's confession, and failed to advise Petitioner, before the guilty plea, that the motion to suppress would be meritorious; (4) failed to advise Petitioner that he would be presumed innocent and that the State had the burden to prove his guilt at trial; and (5) advised Petitioner that, if he refused the plea offer, he would be convicted and sentenced to life imprisonment.

**Petitioner's Burden**

**A. IAC by Washington during State Habeas**

Petitioner argues that attorney Washington committed IAC by not properly pursuing the post-conviction process. Those claims need to be analyzed only to determine whether Petitioner has demonstrated cause under Martinez to excuse his procedural defaults and allow the presentation of his IAC claims against Whatley on the merits. The court need

not address whether Washington committed IAC that constitutes cause if the underlying claims against Whatley fail on the merits. King v. Davis, 883 F.3d 577, 585 (5th Cir. 2018) (electing to ignore the procedural bar and cut to the "core of the case," the merits of the underlying IAC claims); Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995); Rubens v. Cain, 2016 WL 8739197 n. 43 (E.D. La. 2016). After review of the record, the undersigned has determined that a direct review of the merits affords a more efficient means of resolving this petition.

### B. *De Novo* Standard Applies

When a claim has been "adjudicated on the merits in state court," the federal court shall not grant habeas relief unless the state court's adjudication of the claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or was based on an unreasonable determination of the facts. 28 USC § 2254(d). But Petitioner's claims were not adjudicated on the merits in state court.

The claims presented in this federal petition were raised in state court only in the application to the Supreme Court of Louisiana. The Fifth Circuit held on the earlier appeal that the Supreme Court's denial was "on procedural grounds rather than on the merits." Coleman, 833 F.3d at 541. For claims that are not adjudicated on the merits in the state court, the federal court applies a *de novo* standard when assessing the claims. King, 883 F.3d at 585-86; Hoffman v. Cain, 752 F.3d 430, 438 (5th Cir. 2014).

### C. IAC in a Guilty Plea Case

To establish ineffective assistance of counsel, Petitioner must demonstrate both deficient performance by his trial counsel and prejudice resulting from that deficiency.

Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). To show that his trial counsel's performance was deficient, he must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 104 S.Ct. at 2064. To demonstrate prejudice from his trial counsel's deficient performance, he must show that his attorney's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

To show prejudice in a guilty plea case "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S.Ct. 366, 370 (1985). A "bare allegation" that the petitioner would have insisted upon going to trial is insufficient to establish prejudice, especially where evidence of guilt against the petitioner was strong. King v. Davis, 898 F.3d 600, 604-05 (5th Cir. 2018).

**No Motion to Suppress**

    **A. Introduction**

Petitioner argues that attorney Whatley was ineffective because she did not file a motion to suppress his statement to police and did not tell him, before he decided to plead guilty, that such a motion would have been meritorious. Petitioner argues in his habeas petition that there are four theories as to why the evidence of his interrogation would have been suppressed: (1) the statement was involuntary because he was not told that it could be used against him, (2) Miranda warnings were not given, (3) there was no evidence of a signed statement or waiver of rights indicating that Petitioner confessed to being involved in the crime, and (4) Petitioner never admitted to detectives that he had knowledge of the

robbery and murder, and he did not tell detectives that he was present when the incident took place.

### B. Relevant Facts

Each of Petitioner's assertions is false. The state trial court held a "free and voluntary hearing" to determine the admissibility of a recorded statement Petitioner gave to Detective Rod Johnson of the Shreveport Police Department. Detective Johnson testified that he interviewed Petitioner on December 7, 2007. Petitioner was in jail, so Johnson and Detective Brown checked him out and brought him back to Johnson's office. Johnson testified that Petitioner was advised of his Miranda warnings with a standard Shreveport Police Department rights form. Johnson read the form, including the advice that "anything he said could and would be used against him," and Petitioner acknowledged his rights by signing the form. Johnson then described the statement that Petitioner made, which included Petitioner's indication of knowledge of the incident, the plan of a robbery, his presence at the scene, and that there was a shooting that resulted in the death of Keisha Avery. Johnson testified that he recorded the statement on a digital recorder, and the recording was played at the hearing. The court found that the statement was admissible because Petitioner gave it freely and voluntarily. Tr. 660-76.

A transcript of the recorded statement is also in the record. It reflects that Petitioner was told that he was under investigation for his part in the homicide of Keisha Avery, and he was read his Miranda rights, signed an acknowledgement, and agreed to give his statement. Petitioner first said that Nelson Youngblood, a/k/a Boo, tried to get him to participate in the robbery of some marijuana, but Petitioner declined to participate.

Page 6 of 17

Detective Johnson questioned whether Petitioner was being truthful, and Petitioner then admitted that Youngblood picked him up and "[w]e went to the house." The Averys arrived, where they encountered Youngblood, Petitioner, and a man named Wayne. Petitioner said that Wayne was armed with a pistol and shot at Mr. Avery, who dropped the marijuana and took off running. Petitioner said he grabbed the marijuana and took off running himself. He then heard four or five shots, met up with the other two men, and they left. Petitioner denied that he had a weapon, but he admitted that he knew of the robbery plan and participated. He said they never had money to complete a purchase of the marijuana because "we knew the whole time what we was planning on doing." Petitioner said he did not know who shot Mrs. Avery, but Wayne was the only one with a weapon. Petitioner conceded that his hands had been on the pistol magazine that police found, so they might find his DNA on it. Tr. 128-50.

The prosecutor was called upon to provide a factual basis at Petitioner's guilty plea hearing. The prosecutor recited that the men planned to rob the Averys of their marijuana and that, during the execution of the robbery, Keisha Avery was shot numerous times and killed. The prosecutor stated that Petitioner had given a statement to detectives and indicated that it was a planned robbery of the Averys but denied that he possessed a weapon, and he claimed that another one of the participants actually shot Mrs. Avery. The judge asked: "Mr. Coleman, are those facts true and correct?" Petitioner responded, "Yes, ma'am." Tr. 1349-50.

### C. Analysis

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007). The same would be true of a claim that counsel should have sought suppression based on a lack of Miranda warnings or other grounds to challenge the admissibility of evidence. Grueninger v. Dir., Virginia Dep't of Corr., 813 F.3d 517, 530 (4th Cir. 2016); Campbell v. Cain, 2016 WL 1169799, *6 (W.D. La. 2016), R&R adopted, 2016 WL 1223341 (W.D. La. 2016).

The evidence described above squarely refutes each of the four grounds on which Petitioner contends Ms. Whatley should have filed a motion to suppress. Petitioner was given his Miranda warnings and told that a statement could be used against him. He then signed a waiver form and admitted his involvement in the crimes. A motion to suppress the statement would have inevitably failed, and "counsel is not required to make futile motions or objections." Garcia v. Stephens, 793 F.3d 513, 525 (5th Cir. 2015), quoting Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990). This IAC claim lacks merit.

**No Interview of Alibi Witnesses**

Petitioner argues that his guilty plea was not voluntary because Ms. Whatley did not interview his alibi witnesses and, instead, told Petitioner that the witnesses refused to testify. Petitioner submits in support three "affidavits" from his mother, his uncle, and

another man. Doc. 1, exhibits M, N, & O.[1]  The purported affidavits appear to have been prepared on the same typewriter that drafted the writ application.  Each is signed, but there is no statement that the representations were made after being placed under oath or were made under penalty of perjury.  Each statement bears a stamp of a notary, but there is no signature by the notary or other representation made by her.  The documents are, in effect, unsworn letters from these witnesses.

  Michael Ellis wrote that on May 19, 2007, at about 7:00 p.m., he picked up Ronnie Coleman and Ronnie's nephew, Jeremy Coleman (Petitioner), and drove them to a party on Woodrow Street where they stayed from about 7:30 p.m. until 2:00 a.m.  They then went to an IHOP restaurant off Pines Road to eat breakfast, and he dropped off Ronnie and Petitioner between 3:00 and 3:30 that Sunday morning.  Ellis states that he discussed Petitioner's case with Petitioner's mother and learned that the victim was killed during the time they were at the party.  He says that he assured her that he was "more than willing to testify," but Petitioner's trial attorney never contacted him.  Ronnie Coleman provides the same information in his letter and says that he was never contacted by counsel.  Both men say that, had they been called, they would have testified to the facts given in their letters.

---

[1] Petitioner's writ application to the Supreme Court of Louisiana cited two unspecified exhibits (L & M) in support of this claim.  The State submits that it was never served with a copy of that writ application, and its request to the Supreme Court for a copy was not fulfilled.  Accordingly, the only copy of the writ application in the record is the one attached to the federal petition.  The cited exhibits are not attached to that copy, so it is not clear whether these "affidavits" were filed in the state court proceedings.  In any event, the court is assessing the claims de novo so is not confined to the material in the state court record as it would be if the claims had been adjudicated on the merits and were being reviewed under § 2254(d).

Antoinette Coleman is Petitioner's mother. She wrote that she was in court for the trial when Ms. Whatley approached her during a recess in an excited and happy manner. Whatley stated that Petitioner "got lucky" because the prosecutor had offered a deal for Petitioner to plead guilty to manslaughter and not receive the maximum sentence. Ms. Coleman states that she asked Whatley whether the plea would be in her son's best interest, and Whatley said that it was because Petitioner made a statement to police that implicated himself, and the prosecutor intended to use co-conspirator Nelson Youngblood's statement that implicated Petitioner as the shooter. Ms. Coleman represents that Whatley told her that she contacted the two alibi witnesses "and they refused to testify because Jeremy was not with them on the night of the murder." Ms. Coleman states that her son originally refused the plea offer but accepted it after she, based on the advice of Ms. Whatley, recommended that he plead guilty to manslaughter. Had she known that Ms. Whatley was giving her false information, Ms. Coleman wrote, she would not have recommended that her son plead guilty.

A "complete failure to investigate alibi witnesses [falls] below the standard of a reasonably competent attorney practicing under prevailing professional norms. Bryant v. Scott, 28 F.3d 1411, 1418 (5th Cir. 1994). But "[c]laims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010). A petitioner who makes such a claim must demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out

the content of the proposed testimony, and showing that the testimony would have been favorable to a particular defense. Id., citing Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009). See also Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000).

Petitioner has presented unsworn letters from witnesses who claim they would have provided alibi testimony. There has been no hearing to test those claims or receive evidence from the State. Where the only evidence of a missing witness' testimony is from the defendant, the court views such claims with great caution. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001); Ardoin v. Vannoy, 2017 WL 4400867, *6 (W.D. La. 2017). This is consistent with the mandated "strong presumption" that counsel's representation was within the wide range of reasonable professional assistance. King, 883 F.3d at 586.

Even if Petitioner could present enough evidence to meet his burden on the first prong, he must still show prejudice under Strickland and Hill v. Lockhart, meaning there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial. The State was armed with Petitioner's recorded admission to Detective Johnson that he knew about the robbery plan, was present at the home where they waited to rob the Averys, and participated in the crime by grabbing the marijuana and running with it after a shot was fired at Mr. Avery.

Petitioner essentially confessed to being a principal to armed robbery and the related murder of Mrs. Avery.[2] Louisiana's felony-murder doctrine provides that a crime such as

---

[2] Nelson Youngblood was arrested and gave a lengthy recorded interview in which he downplayed his involvement but claimed that Petitioner was the person who killed the victim. Tr. 43-106. Youngblood was convicted of second-degree murder, in a separate trial, based on testimony that he and two other men pulled off the robbery that resulted in

robbery may escalate into a second-degree murder even if that is beyond the original plan of the defendant or his accomplice who unexpectedly kills during the commission of the underlying felony offense. State v. Williams, 266 So.3d 485, 489 (La. App. 2d Cir. 2019). "[W]hen two or more persons embark on a concerted course of action, each person becomes responsible for not only his own acts, but also for the acts of the other, including deviations from the common plan which are the foreseeable consequences of carrying out the plan." Id. Petitioner's own words provided the State with powerful evidence of second degree murder.

Petitioner's mother makes an unsworn representation that it was her advice, influenced by Ms. Whatley, that persuaded Petitioner to plead guilty. The undersigned is not persuaded, considering the record as a whole, that the advice from Ms. Whatley would have been any different had she spoken to the two alibi witnesses and assessed that testimony in weighing the pros and cons of the plea offer. The State had a strong case based on Petitioner's recorded admission to all of the essential elements of second-degree murder. It is unlikely that counsel would have put much stock in claims by Petitioner's uncle and a friend that, contrary to what Petitioner told the police, Petitioner was actually at a party and not involved in the marijuana robbery that he described and admitted committing. The trial judge later reviewed with Petitioner the charges that he faced, had

---

the murder. State v. Youngblood, 48 So.3d 1122 (La. App. 2d Cir. 2010). There is an indication in the record that Youngblood was convicted at his trial before Petitioner went to trial, but it is not known whether Youngblood would have been willing to testify against Petitioner at his trial or whether the State could have used Youngblood's statement as evidence against Petitioner.

the prosecutor present a factual basis, and had Petitioner admit under oath that those facts were correct.

As noted above, a bare allegation that a petitioner would have insisted on going to trial is insufficient to establish prejudice, especially where evidence of guilt was strong. King, 898 F.3d at 604-05, citing Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994). And a bare allegation is all we have from Petitioner on this point. There is no reasonable likelihood, even if the two alibi witnesses were sitting on the front row of the courtroom and ready to testify, that Petitioner would have turned down the fairly generous terms of the plea offer and insisted on going to trial with such an obviously weak alibi defense and face the strong prospect of a natural life sentence. And a life sentence is exactly what his colleague Nelson Youngblood received after he did go to trial and get convicted. Petitioner has not met his burden of demonstrating that he is entitled to have his guilty plea set aside based on this claim.

**No Advice of Presumption of Innocence and the State's Burden**

Petitioner argued in his writ application in the Supreme Court of Louisiana that Ms. Whatley was ineffective because she did not explain to him that he was entitled to a presumption of innocence and that the State had the burden of proving his guilt beyond a reasonable doubt. He made a related claim that Whatley advised him that he was unable to prove his innocence so, if he refused the plea offer, he would be convicted of second-degree murder and receive a life sentence.

Petitioner's writ application to the Supreme Court of Louisiana and his brief to this court focus on the arguments about the motion to suppress and alibi witnesses. His writ

application listed the burden and presumptions issues but then devoted only one confusing paragraph to them:

> To add insult to injury, Ms. Whatley's failure to advise Coleman that he was entitled to a presumption of innocence, and that the State had the burden of proving his guilty beyond a reasonable doubt, was ultimately caused by Ms. Whatley's advise (sic) that because Coleman was unable to prove his innocence, it would be futile to proceed with trial.

Petitioner's only briefing of these claims in his federal petition is a repeat of that same paragraph.

"[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983). "Additionally, allegations in a federal habeas petition that are inadequately briefed are waived and will not be considered. Perez v. Davis, 2018 WL 7141435, *2 (N.D. Tex. 2018), citing Woods v. Cockrell, 307 F.3d 353, 357 (5th Cir. 2002). Petitioner's conclusory assertions on these issues are insufficient to brief a claim beyond the conclusory level and warrant their rejection.

There is also evidence that undermines the claims. The State points out that Petitioner sat through days of jury selection where panel after panel of prospective jurors were told about the constitutional rules that would apply to the trial. For example, the jury was told that in every criminal case, from a speeding ticket to first degree murder, there is a "presumption of innocence where everyone is presumed innocent until they're proven guilty." And, it was added, "the State's burden of proving a case is beyond a reasonable doubt." Jurors were then asked additional questions and presented with hypothetical situations to ensure that they understood the presumption of innocence and the State's

burden and that "[t]he defendant does not have the burden of proving he's not guilty." Tr. 1241-42. Petitioner sat in the courtroom as those rights were described over and over before he entered his plea.

The presumption of innocence and the State's burden do not have to be explicitly explained during the Boykin process. The record suggests that Petitioner was made aware of those rights nonetheless, and he has not pointed to any evidence to the contrary. Considering Petitioner's incriminating statement and the other evidence against him, together with the significantly reduced sentencing exposure obtained by the plea, there is no basis to believe that Petitioner would have rejected the plea offer and insisted on going to trial if only Ms. Whatley had told him that he enjoyed a presumption of innocence and the State had to prove its case beyond a reasonable doubt. Petitioner is not entitled to have his guilty plea set aside based on these claims.

**No Withdrawal or Request for Continuance**

Petitioner's writ application to the Supreme Court of Louisiana listed as a claim that defense counsel should have moved for a continuance or withdrawn from the case because the circumstances suggested an unseemly desire by counsel to rush the resolution of the case. The petition did not, however, brief the issue. Petitioner's memorandum filed with this court also lacks any discussion or argument of this claim beyond its mere listing. This claim, like the two discussed above, is conclusory and inadequately briefed, so undeserving of habeas relief.

The trial court proceedings were transcribed, but Petitioner does not point to any evidence in the record to support his conclusory assertion that counsel was trying to rush

the resolution of the case. Petitioner's description of the events surrounding the plea offer suggests that Ms. Whatley did advise Petitioner to accept the offer, and that advice appears to be sound in light of the record. Petitioner was facing a natural life sentence with no hope of parole, but he obtained a 50-year sentence with the potential to regain his freedom earlier by earning good time and parole. Given that Petitioner was a second offender and was facing a third felony charge that was dropped as part of this plea agreement, the bargain appears to have been a reasonable one. Counsel certainly cannot be faulted for encouraging its acceptance, and there is no indication that she unduly influenced Petitioner by rushing the procedure to accept a plea that he would have otherwise rejected and insisted on trial. This final claim also lacks merit.

Accordingly,

It is recommended that Petitioner's Petition for Writ of Habeas Corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar

that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of May, 2019.

_____
Mark L. Hornsby
U.S. Magistrate Judge